UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHANNIEN OJIMBA, Individually and as Mother and Next Friend of NNAMDI EZEKIEL OJIMBA, a minor,<br><br>Plaintiff,<br><br>v.<br><br>MICHELLE MOORE, NP, ANDREW GUZMAN, M.D., PATRICK GIBBONS, D.O., and the UNITED STATES OF AMERICA<br><br>Defendants. | No:<br><br>JURY DEMAND<br><br>FORM 95, DENIAL LETTER, ATTORNEY AFFIDAVIT AND PHYSICIAN'S REPORTS ARE ATTACHED |

## COMPLAINT AT LAW

The plaintiffs, CHANNIEN OJIMBA, Individually and as Mother and Next Friend of NNAMDI EZEKIEL OJIMBA, a minor, by and through their attorneys, RAYMOND & RAYMOND, LTD., complaining of the defendants, MICHELLE MOORE, NP ("MOORE"), ANDREW GUZMAN, M.D. ("GUZMAN"), PATRICK GIBBONS, D.O. ("GIBBONS") and the UNITED STATES OF AMERICA ("UNITED STATES"), state as follows:

### JURISDICTION AND VENUE

1. This medical negligence action against the defendant, UNITED STATES, arises under the Federal Tort Claims Act, 28 U.S.C. §2671, *et seq*. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), because the acts complained of occurred in Cook County, Illinois at a federally funded CLINIC.

2. A U.S. Department of Justice Standard Form 95 was sent to the Department of Health and Human Services on January 9, 2020. *See* Form 95, attached as **Exhibit A**.

1

3.      The Department of Health and Human Services issued a final denial of the tort claims on July 28, 2020.  *See* Final Denial letter, attached as **Exhibit B**.

4.      This action is timely brought within six (6) months of the final denial.

## COUNT I-MOORE
### Medical Negligence – Channien Ojimba

1.      On and after April 26, 2017, UNITED STATES managed, maintained, controlled and operated a medical clinic, known as the HOWARD BROWN HEALTH CENTER, ("CLINIC") located at 6500 N. Clark Street, Chicago, Illinois 60626.

2.      On and after April 26, 2017, UNITED STATES permitted and held its officers and employees of the CLINIC to be federal employees for the purpose of malpractice tort claims against such medical clinics.

3.      CLINIC is a not-for-profit Health Center Program grantee under 42 U.S.C. 254b and deemed Public Health Service employee under 42 U.S.C. 233(g)-(n) located in Cook County, Illinois.

4.      On or about April 26, 2017, and thereafter, MOORE was a nurse practitioner providing services to patients at the CLINIC.

5.      On or about April 26, 2017, and thereafter, MOORE was an employee and/or agent, real, apparent or implied, of UNITED STATES.

6.      On or about April 26, 2017, and thereafter, the services provided by MOORE to CHANNIEN OJIMBA at the CLINIC were within the scope of MOORE's employment and/or agency with UNITED STATES.

7.      On or about April 26, 2017, and thereafter CHANNIEN OJIMBA presented to MOORE at the CLINIC.  MOORE prescribed CHANNIEN OJIMBA Paxil.

2

8.     On or about May 15, 2017, MOORE refilled CHANNIEN OJIMBA's Paxil prescription.

9.     On or about November 18, 2017, CHANNIEN OJIMBA presented to GIBBONS at the CLINIC.  During said visit GIBBONS learned that CHANNIEN OJIMBA was actively trying to become pregnant.

10.     On or about November 18, 2017, GIBBONS prescribed CHANNIEN OJIMBA Paxil.

11.     On or about March 20, 2018, CHANNIEN OJIMBA presented to MOORE at the CLINIC for a possible referral to a fertility specialist.

12.     On or about March 20, 2018, MOORE refilled CHANNIEN OJIMBA's Paxil prescription: 30 tablets each for five refills.

13.     On or about April 17, 2018 and June 27, 2018, CHANNIEN OJIMBA presented to GUZMAN at the CLINIC, who prescribed Chantix and continued Paxil.

14.     On or about July 19, 2018, GUZMAN diagnosed CHANNIEN OJIMBA as being pregnant.

15.     At all material times, it was the duty of MOORE to possess and apply the knowledge and use the skill and care used by a reasonably well-qualified nurse practitioner under circumstances similar to those present in the treatment of CHANNIEN OJIMBA.

16.     On and after April 26, 2017, MOORE breached her duty to CHANNIEN OJIMBA through one or more of the following negligent acts and/or omissions:

a.     prescribed Paxil to CHANNIEN OJIMBA despite knowing that she desired and was attempting to get pregnant; and/or,

b.     failed to advise CHANNIEN OJIMBA to stop taking Paxil when attempting to get pregnant; and/or,

3

  c.  failed to advise CHANNIEN OJIMBA that Paxil is contraindicated in early pregnancy; and/or,

  d.  failed to recognize that Paxil may be deleterious to a fetus in early pregnancy; and/or,

  e.  failed to recognize that Paxil can cause birth defects when taken early in pregnancy; and/or,

  f.  failed to advise CHANNIEN OJIMBA that Paxil is known to cause birth defects, including an omphalocele, when ingested during the first three (3) months of pregnancy; and/or,

  g.  refilled CHANNIEN OJIMBA's Paxil prescription despite knowing that she was actively attempting to get pregnant; and/or,

  h.  otherwise carelessly and negligently provided and/or failed to provide reasonable nurse practitioner healthcare services.

  17.  The care and treatment rendered to CHANNIEN OJIMBA by MOORE did not meet the standard of care which could reasonably have been expected in a patient such as Plaintiff.

  18.  As a direct and proximate result of the negligent acts and/or omissions of MOORE, CHANNIEN OJIMBA continued to take Paxil while pregnant, and as a result, her son, NNAMDI EZEKIEL OJIMBA, was born prematurely with an omphalocele on February 15, 2019. CHANNIEN OJIMBA suffered severe emotional distress throughout her pregnancy and thereafter from her fear that the Paxil would cause birth defects and from the injuries NNAMDI EZEKIEL OJIMBA suffers as a result.

  19.  The first time CHANNIEN OJIMBA knew or should have known of the negligence was October 23, 2019.

  WHEREFORE, Plaintiff CHANNIEN OJIMBA prays for judgment against Defendant MOORE, for a fair and reasonable amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), the costs of this lawsuit, pre-judgment and post-judgment interest as allowed by law,

and for such other and further relief as this Court may deem just and proper.

## COUNT II-MOORE
### Medical Negligence- Nnamdi Ezekiel Ojimba

1.     On and after April 26, 2017, defendant, UNITED STATES, managed, maintained, controlled and operated a medical clinic, known as the HOWARD BROWN HEALTH CENTER ("CLINIC"), located at 6500 N. Clark Street, Chicago, Illinois 60626.

2.     On and after April 26, 2017, UNITED STATES permitted and held its officers and employees of the CLINIC to be federal employees for the purpose of malpractice tort claims against such medical clinics.

3.     CLINIC is a not-for-profit Health Center Program grantee under 42 U.S.C. 254b and deemed Public Health Service employee under 42 U.S.C. 233(g)-(n) located in Cook County, Illinois.

4.     On or about April 26, 2017 and thereafter, MOORE was a nurse practitioner providing services to patients at the CLINIC.

5.     On or about April 26, 2017, and thereafter, MOORE was an employee and/or agent, real, apparent or implied, of UNITED STATES.

6.     On or about April 26, 2017, and thereafter, the services provided by MOORE to CHANNIEN OJIMBA at the CLINIC were within the scope of MOORE's employment and/or agency with UNITED STATES.

7.     On or about April 26, 2017, and thereafter CHANNIEN OJIMBA presented to MOORE at the CLINIC.  MOORE prescribed CHANNIEN OJIMBA Paxil.

8.     On or about May 15, 2017, MOORE refilled CHANNIEN OJIMBA's Paxil

prescription.

9.  On or about November 18, 2017, CHANNIEN OJIMBA presented to GIBBONS at the CLINIC. During said visit GIBBONS learned that CHANNIEN OJIMBA was actively trying to become pregnant.

10. On or about November 18, 2017, GIBBONS prescribed Paxil.

11. On or about March 20, 2018, CHANNIEN OJIMBA presented to MOORE at the CLINIC for a possible referral to a fertility specialist.

12. On or about March 20, 2018, MOORE refilled the Paxil prescription: 30 tablets each for five refills.

13. On or about April 17, 2018 and June 27, 2018, CHANNIEN OJIMBA presented to GUZMAN at the CLINIC, who prescribed Chantix and continued Paxil.

14. On or about July 19, 2018, GUZMAN diagnosed CHANNIEN OJIMBA as being pregnant.

15. At all material times, it was the duty of MOORE to possess and apply the knowledge and use the skill and care used by a reasonably well-qualified nurse practitioner under circumstances similar to those present in the treatment of CHANNIEN OJIMBA.

16. On and after April 26, 2017, MOORE breached her duty to NNAMDI EZEKIEL OJIMBA through one or more of the following negligent acts and/or omissions:

   a.  prescribed Paxil to CHANNIEN OJIMBA despite knowing that she desired and was attempting to get pregnant; and/or,

   b.  failed to advise CHANNIEN OJIMBA to stop taking Paxil when attempting to get pregnant; and/or,

   c.  failed to advise CHANNIEN OJIMBA that Paxil is contraindicated in early

6

pregnancy; and/or,

d.     failed to recognize that Paxil may be deleterious to a fetus in early pregnancy; and/or,

e.     failed to recognize that Paxil can cause birth defects when taken early in pregnancy; and/or,

f.     failed to advise CHANNIEN OJIMBA that Paxil is known to cause birth defects, including an omphalocele, when ingested during the first three (3) months of pregnancy; and/or,

g.     refilled CHANNIEN OJIMBA's Paxil prescription despite knowing that she was actively attempting to get pregnant; and/or,

h.     otherwise carelessly and negligently provided and/or failed to provide reasonable nurse practitioner healthcare services.

17.     The care and treatment rendered to CHANNIEN OJIMBA and NNAMDI EZEKIEL OJIMBA did not meet the standard of care which could reasonably have been expected in patients such as Plaintiffs.

18.     As a direct and proximate result of the negligent acts and/or omissions of MOORE, NNAMDI EZEKIEL OJIMBA was born with an omphalocele prematurely on February 15, 2019. As a result Plaintiff NNAMDI EZEKIEL OJIMBA has suffered multiple surgeries, emotional distress, pain and suffering, loss of a normal life, disfigurement and medical expenses due to his injuries and other personal and pecuniary injuries.

19.     The first time Plaintiffs knew or should have known of the negligence is October 23, 2019.

WHEREFORE, Plaintiff CHANNIEN OJIMBA as Mother and Next Friend of NNAMDI EZEKIEL OJIMBA prays for judgment against Defendant MOORE for a fair and reasonable amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), the costs of this lawsuit, pre-

7

judgment and post-judgment interest as allowed by law, and for such other and further relief as this Court may deem just and proper.

## COUNT III-MOORE
### Family Expense Act- Channien Ojimba

1.-19.   Plaintiff, CHANNIEN OJIMBA, realleges Paragraphs 1 through 19 of Count II of this Complaint as Paragraphs 1 through 19 of this Count III.

20.   As a direct and proximate result of one or more of the aforesaid acts and/or omissions of MOORE, CHANNIEN OJIMBA will become obligated for medical and rehabilitative expenses related to NNAMDI EZEKIEL OJIMBA's medical care.

WHEREFORE Plaintiff CHANNIEN OJIMBA prays for judgment against Defendant MOORE, for a fair and reasonable amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), the costs of this lawsuit, pre-judgment and post-judgment interest as allowed by law, and for such other and further relief as this Court may deem just and proper.

## COUNT IV-GUZMAN
### Medical Negligence - Channien Ojimba

1.   On and after April 26, 2017, UNITED STATES managed, maintained, controlled and operated a medical clinic, known as the HOWARD BROWN HEALTH CENTER ("CLINIC"), located at 6500 N. Clark Street, Chicago, Illinois 60626.

2.   On and after April 26, 2017, UNITED STATES permitted and held its officers and employees of the CLINIC to be federal employees for the purpose of malpractice tort claims against such medical clinics.

3.   CLINIC is a not-for-profit Health Center Program grantee under 42 U.S.C. 254b and deemed Public Health Service employee under 42 U.S.C. 233(g)-(n) located in Cook County,

Illinois.

4.     On or about April 17, 2018, and thereafter, GUZMAN was a medical doctor providing services to patients at the CLINIC.

5.     On or about April 17, 2018, and thereafter, GUZMAN was an employee and/or agent, real, apparent or implied, of UNITED STATES.

6.     On or about April 17, 2018, and thereafter, the services provided by GUZMAN to CHANNIEN OJIMBA at the CLINIC were within the scope of GUZMAN's employment and/or agency with UNITED STATES.

7.     On or about April 17, 2018, and thereafter CHANNIEN OJIMBA presented to GUZMAN at the CLINIC.  GUZMAN continued CHANNIEN OJIMBA's Paxil medication.

8.     On or about June 27, 2018, GUZMAN continued CHANNIEN OJIMBA's Paxil prescription.

9.     On or about July 19, 2018, GUZMAN diagnosed CHANNIEN OJIMBA as being pregnant.

10.    At all material times, it was the duty of GUZMAN to possess and apply the knowledge and use the skill and care used by a reasonably well-qualified medical doctor under circumstances similar to those present in the treatment of CHANNIEN OJIMBA.

11.    On and after April 17, 2018, GUZMAN breached his duty to CHANNIEN OJIMBA through one or more of the following negligent acts and/or omissions:

   a.     prescribed Paxil to CHANNIEN OJIMBA despite knowing that she desired and was attempting to get pregnant; and/or,

   b.     failed to advise CHANNIEN OJIMBA to stop taking Paxil when attempting to get pregnant; and/or,

9

c.     failed to advise CHANNIEN OJIMBA that Paxil is contraindicated in early pregnancy; and/or,

d.     failed to recognize that Paxil may be deleterious to a fetus in early pregnancy; and/or,

e.     failed to recognize that Paxil can cause birth defects when taken early in pregnancy; and/or,

f.     failed to advise CHANNIEN OJIMBA that Paxil is known to cause birth defects, including an omphalocele, when ingested during the first three (3) months of pregnancy; and/or,

g.     refilled CHANNIEN OJIMBA's Paxil prescription despite having knowledge that she was actively attempting to get pregnant; and/or,

h.     refilled CHANNIEN OJIMBA's Paxil prescription despite her medical history; and/or,

i.     otherwise carelessly and negligently provided and/or failed to provide reasonable medical doctor healthcare services.

12.    The care and treatment rendered to CHANNIEN OJIMBA by GUZMAN did not meet the standard of care which could reasonably have been expected in a patient such as Plaintiff.

13.    As a direct and proximate result of the negligent acts and/or omissions of GUZMAN, CHANNIEN OJIMBA continued to take Paxil while pregnant and as a result her son, NNAMDI EZEKIEL OJIMBA was born premature with an omphalocele on February 15, 2019. CHANNIEN OJIMBA suffered severe emotional distress throughout her pregnancy and thereafter from her fear that the Paxil would cause birth defects and from the injuries NNAMDI EZEKIEL OJIMBA suffers as a result.

14.    The first time CHANNIEN OJIMBA knew or should have known of the negligence was October 23, 2019.

WHEREFORE, CHANNIEN OJIMBA prays for judgment against Defendant GUZMAN,

10

for a fair and reasonable amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), the costs of this lawsuit, pre-judgment and post-judgment interest as allowed by law, and for such other and further relief as this Court may deem just and proper.

## COUNT V-GUZMAN
### Medical Negligence- Nnamdi Ezekiel Ojimba

1.      On and after April 26, 2017, defendant, UNITED STATES, managed, maintained, controlled and operated a medical clinic, known as the HOWARD BROWN HEALTH CENTER ("CLINIC"), located at 6500 N. Clark Street, Chicago, Illinois 60626.

2.      On and after April 26, 2017, UNITED STATES permitted and held its officers and employees of the CLINIC to be federal employees for the purpose of malpractice tort claims against such medical clinics.

3.      CLINIC is a not-for-profit Health Center Program grantee under 42 U.S.C. 254b and deemed Public Health Service employee under 42 U.S.C. 233(g)-(n) located in Cook County, Illinois.

4.      On or about April 17, 2018, and thereafter, GUZMAN was a medical doctor providing services to patients at the CLINIC.

5.      On or about April 17, 2018, and thereafter, GUZMAN was an employee and/or agent, real, apparent or implied, of UNITED STATES.

6.      On or about April 17, 2018, and thereafter, the services provided by GUZMAN to CHANNIEN OJIMBA at the CLINIC were within the scope of GUZMAN's employment and/or agency with UNITED STATES.

7.      On or about April 17, 2018, and thereafter CHANNIEN OJIMBA presented to

11

GUZMAN at the CLINIC and GUZMAN continued CHANNIEN OJIMBA's Paxil prescription.

8.     On or about June 27, 2018, CHANNIEN OJIMBA presented to GUZMAN and GUZMAN continued her Paxil prescription.

9.     On or about July 19, 2018, GUZMAN diagnosed CHANNIEN OJIMBA as being pregnant.

10.     At all material times, it was the duty of GUZMAN to possess and apply the knowledge and use the skill and care used by a reasonably well-qualified medical doctor under circumstances similar to those present in the treatment of CHANNIEN OJIMBA.

11.     On and after April 17, 2018, GUZMAN breached his duty to NNAMDI EZEKIEL OJIMBA, through one or more of the following negligent acts and/or omissions:

a.     prescribed Paxil to CHANNIEN OJIMBA despite knowing that she desired and was attempting to get pregnant; and/or,

b.     failed to advise CHANNIEN OJIMBA to stop taking Paxil when attempting to get pregnant; and/or,

c.     failed to advise CHANNIEN OJIMBA that Paxil is contraindicated in early pregnancy; and/or,

d.     failed to recognize that Paxil may be deleterious to a fetus in early pregnancy; and/or,

e.     failed to recognize that Paxil can cause birth defects when taken early in pregnancy; and/or,

f.     failed to advise CHANNIEN OJIMBA that Paxil is known to cause birth defects, including an omphalocele, when ingested during the first three (3) months of pregnancy; and/or,

g.     refilled CHANNIEN OJIMBA's Paxil prescription despite having knowledge that she was actively attempting to get pregnant; and/or,

h.     refilled CHANNIEN OJIMBA's Paxil prescription despite her medical history; and/or,

12

i.       otherwise carelessly and negligently provided and/or failed to provide reasonable medical doctor healthcare services.

12.     The care and treatment rendered to CHANNIEN OJIMBA and NNAMDI EZEKIEL OJIMBA did not meet the standard of care which could reasonably have been expected in patients such as Plaintiffs.

13.     As a direct and proximate result of the negligent acts and/or omissions of GUZMAN, NNAMDI EZEKIEL OJIMBA was born premature with an omphalocele on February 15, 2019. As a result NNAMDI EZEKIEL OJIMBA has suffered multiple surgeries, emotional distress, pain and suffering, loss of a normal life, disfigurement and medical expenses due to his injuries and other personal and pecuniary injuries.

14.     The first time Plaintiffs knew or should have known of the negligence is October 23, 2019.

WHEREFORE, CHANNIEN OJIMBA as Mother and Next Friend of NNAMDI EZEKIEL OJIMBA, prays for judgment against GUZMAN for a fair and reasonable amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), the costs of this lawsuit, pre-judgment and post-judgment interest as allowed by law, and for such other and further relief as this Court may deem just and proper.

## COUNT VI-GUZMAN
## Family Expense Act- Channien Ojimba

1.-14.   Plaintiff CHANNIEN OJIMBA realleges Paragraphs 1 through 14 of Count V of this Complaint as Paragraphs 1 through 14 of this Count VI.

15.     As a direct and proximate result of one or more of the aforesaid acts and/or omissions of GUZMAN, CHANNIEN OJIMBA will become obligated for medical and rehabilitative expenses

related to her son's medical care and treatments.

WHEREFORE CHANNIEN OJIMBA prays for judgment against Defendant GUZMAN for a fair and reasonable amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), the costs of this lawsuit, pre-judgment and post-judgment interest as allowed by law, and for such other and further relief as this Court may deem just and proper.

### COUNT VII-GIBBONS
**Medical Negligence - Channien Ojimba**

1.     On and after April 26, 2017, UNITED STATES managed, maintained, controlled and operated a medical clinic, known as the HOWARD BROWN HEALTH CENTER ("CLINIC"), located at 6500 N. Clark Street, Chicago, Illinois 60626.

2.     On and after April 26, 2017, UNITED STATES permitted and held its officers and employees of the CLINIC to be federal employees for the purpose of malpractice tort claims against such medical clinics.

3.     CLINIC is a not-for-profit Health Center Program grantee under 42 U.S.C. 254b and deemed Public Health Service employee under 42 U.S.C. 233(g)-(n) located in Cook County, Illinois.

4.     On or about November 18, 2017, and thereafter, GIBBONS was a medical doctor providing services to patients at CLINIC.

5.     On or about November 18, 2017, and thereafter, GIBBONS was an employee and/or agent, real, apparent or implied, of UNITED STATES.

6.     On or about November 18, 2017, and thereafter, the services provided by GIBBONS to CHANNIEN OJIMBA at CLINIC were within the scope of GIBBONS' employment and/or

agency with UNITED STATES.

9.      On or about November 18, 2017, CHANNIEN OJIMBA presented to GIBBONS at the CLINIC. During said visit GIBBONS learned that CHANNIEN OJIMBA was actively trying to become pregnant.

10.     On or about November 18, 2017, GIBBONS continued CHANNIEN OJIMBA'S prescription for Paxil.

11.     On or about March 20, 2018, CHANNIEN OJIMBA presented to MOORE atCLINIC for a possible referral to a fertility specialist.

12.     On or about March 20, 2018, MOORE refilled CHANNIEN OJIMBA's Paxil prescription: 30 tablets each for five refills.

13.     On or about April 17, 2018 and June 27, 2018, CHANNIEN OJIMBA presented to GUZMAN at the CLINIC, who prescribed Chantix and continued Paxil.

14.     On or about July 19, 2018, GUZMAN diagnosed CHANNIEN OJIMBA as being pregnant.

15.     At all material times, it was the duty of GIBBONS to possess and apply the knowledge and use the skill and care used by a reasonably well-qualified medical doctor under circumstances similar to those present in the treatment of CHANNIEN OJIMBA.

16.     On and after November 18, 2017, GIBBONS breached his duty to Plaintiff CHANNIEN OJIMBA, through one or more of the following negligent acts and/or omissions:

    a.      continued the prescription for Paxil to CHANNIEN OJIMBA despite knowing she was desiring and attempting to get pregnancy; and/or,

    b.      failed to advise CHANNIEN OJIMBA to stop taking Paxil on April 18, 2018;

c.      failed to advise CHANNIEN OJIMBA to stop taking Paxil on June 27, 2018; and/or,

d.      failed to advise CHANNIEN OJIMBA that Paxil is contraindicated in early pregnancy; and/or,

e.      failed to recognize that Paxil may be deleterious to a fetus in early pregnancy; and/or,

f.      failed to recognize that Paxil can cause birth defects when taken early in pregnancy; and/or,

g.      failed to advise CHANNIEN OJIMBA that Paxil is known to cause birth defects, including an omphalocele, when ingested during the first three (3) months of pregnancy; and/or,

h.      otherwise carelessly and negligently provided and/or failed to provide reasonable medical doctor healthcare services.

17.      The care and treatment rendered to CHANNIEN OJIMBA by GIBBONS did not meet the standard of care which could reasonably have been expected in a patient such as Plaintiff.

18.      As a direct and proximate result of the negligent acts and/or omissions of GIBBONS, CHANNIEN OJIMBA continued to take Paxil while pregnant and as a result her son, NNAMDI EZEKIEL OJIMBA, was born premature with an omphalocele on February 15, 2019. CHANNIEN OJIMBA suffered severe emotional distress throughout her pregnancy and thereafter from her fear that the Paxil would cause birth defects and from the injuries NNAMDI EZEKIEL OJIMBA suffers as a result.

19.      The first time CHANNIEN OJIMBA knew or should have known of the negligence was October 23, 2019.

WHEREFORE, CHANNIEN OJIMBA prays for judgment against Defendant GIBBONS, for a fair and reasonable amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), the costs of this lawsuit, pre-judgment and post-judgment interest as allowed by law,

and for such other and further relief as this Court may deem just and proper.

## COUNT VIII-GIBBONS
### Medical Negligence- Nnamdi Ezekiel Ojimba

1.      On and after April 26, 2017, UNITED STATES managed, maintained, controlled and operated a medical clinic, known as the HOWARD BROWN HEALTH CENTER ("CLINIC"), located at 6500 N. Clark Street, Chicago, Illinois 60626.

2.      On and after April 26, 2017, UNITED STATES permitted and held its officers and employees of the CLINIC to be federal employees for the purpose of malpractice tort claims against such medical clinics.

3.      CLINIC is a not-for-profit Health Center Program grantee under 42 U.S.C. 254b and deemed Public Health Service employee under 42 U.S.C. 233(g)-(n) located in Cook County, Illinois.

4.      On or about November 18, 2017, and thereafter, GIBBONS was a medical doctor providing services to patients at the CLINIC .

5.      On or about November 18, 2017, and thereafter, GIBBONS was an employee and/or agent, real, apparent or implied, of UNITED STATES.

6.      On or about November 18, 2017, and thereafter, the services provided by GIBBONS to CHANNIEN OJIMBA at the CLINIC  were within the scope of GIBBONS' employment and/or agency with UNITED STATES.

9.      On or about November 18, 2017, CHANNIEN OJIMBA presented to GIBBONS at the CLINIC.  During said visit GIBBONS learned that CHANNIEN OJIMBA was actively trying to become pregnant.

17

10. On or about November 18, 2017, GIBBONS continued CHANNIEN OJIMBA's prescription for Paxil.

11. On or about March 20, 2018, CHANNIEN OJIMBA presented to MOORE at CLINIC for a possible referral to a fertility specialist.

12. On or about March 20, 2018, MOORE refilled CHANNIEN OJIMBA's Paxil prescription: 30 tablets each for five refills.

13. On or about April 17, 2018 and June 27, 2018, CHANNIEN OJIMBA presented to GUZMAN at the CLINIC, who prescribed Chantix and continued Paxil.

14. On or about July 19, 2018, GUZMAN diagnosed CHANNIEN OJIMBA as being pregnant.

15. At all material times, it was the duty of GIBBONS to possess and apply the knowledge and use the skill and care used by a reasonably well-qualified medical doctor under circumstances similar to those present in the treatment of CHANNIEN OJIMBA.

16. On and after November 18, 2017, GIBBONS breached his duty to CHANNIEN OJIMBA through one or more of the following negligent acts and/or omissions:

    a. continued prescribing Paxil to CHANNIEN OJIMBA, despite knowing she was desiring and attempting to get pregnant; and/or,

    b. failed to advise CHANNIEN OJIMBA to stop taking Paxil on April 18, 2018; and/or,

    c. failed to advise CHANNIEN OJIMBA to stop taking Paxil on June 27, 2018; and/or,

    d. failed to advise CHANNIEN OJIMBA that Paxil is contraindicated in early pregnancy; and/or,

    e. failed to recognize that Paxil may be deleterious to a fetus in early pregnancy; and/or,

    f. failed to recognize that Paxil can cause birth defects when taken early in pregnancy;

18

and/or,

g.   failed to advise CHANNIEN OJIMBA that Paxil is known to cause birth defects, including an omphalocele, when ingested during the first three (3) months of pregnancy; and/or,

h.   otherwise carelessly and negligently provided and/or failed to provide reasonable medical doctor healthcare services.

17.   The care and treatment rendered to CHANNIEN OJIMBA and NNAMDI EZEKIEL OJIMBA did not meet the standard of care which could reasonably have been expected in patients such as Plaintiffs.

18.   As a direct and proximate result of the negligent acts and/or omissions of GIBBONS, NNAMDI EZEKIEL OJIMBA was born prematurely with an omphalocele on February 15, 2019. As a result NNAMDI EZEKIEL OJIMBA has suffered multiple surgeries, emotional distress, pain and suffering, loss of a normal life, disfigurement and medical expenses due to his injuries and other personal and pecuniary injuries.

19.   The first time Plaintiffs knew or should have known of the negligence is October 23, 2019.

WHEREFORE, CHANNIEN OJIMBA as Mother and Next Friend of NNAMDI EZEKIEL OJIMBA, prays for judgment against Defendant GIBBONS for a fair and reasonable amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), the costs of this lawsuit, pre-judgment and post-judgment interest as allowed by law, and for such other and further relief as this Court may deem just and proper.

### COUNT IX-GIBBONS
### Family Expense Act- Channien Ojimba

1.-19.  Plaintiff realleges Paragraphs 1 through 19 of Count VIII of this Complaint as

Paragraphs 1 through 19 of this Count IX.

20.     As a direct and proximate result of one or more of the aforesaid acts and/or omissions of defendant GIBBONS, Plaintiff CHANNIEN OJIMBA will become obligated for medical and rehabilitative expenses related to his medical care.

WHEREFORE Plaintiff CHANNIEN OJIMBA prays for judgment against Defendant GIBBONS, for a fair and reasonable amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), the costs of this lawsuit, pre-judgment and post-judgment interest as allowed by law, and for such other and further relief as this Court may deem just and proper.

## COUNT X-UNITED STATES
### Medical Negligence - Channien Ojimba

1.     On and after April 26, 2017, UNITED STATES managed, maintained, controlled and operated a medical clinic, known as the HOWARD BROWN HEALTH CENTER ("CLINIC") located at 6500 N. Clark Street, Chicago, Illinois 60626.

2.     On and after April 26, 2017, UNITED STATES permitted and held its officers and employees of the CLINIC to be federal employees for the purpose of malpractice tort claims against such medical clinics.

3.     CLINIC is a not-for-profit Health Center Program grantee under 42 U.S.C. 254b and deemed Public Health Service employee under 42 U.S.C. 233(g)-(n) located in Cook County, Illinois.

4.     On or about April 26, 2017 and thereafter, MOORE was a nurse practitioner providing services to patients at the CLINIC.

5.     On or about April 26, 2017, and thereafter, MOORE was an employee and/or agent, real, apparent or implied, of UNITED STATES.

20

6.     On or about April 17, 2018 and thereafter, GUZMAN was a medical doctor providing services to patients at the CLINIC.

7.     On or about April 17, 2018 and thereafter, GUZMAN was an employee and/or agent, real, apparent or implied, of UNITED STATES.

8.     On or about November 18, 2017, and thereafter, GIBBONS was a medical doctor providing services to patients at the CLINIC.

9.     On or about November 18, 2017 and thereafter, GIBBONS was an employee and/or agent, real, apparent or implied, of UNITED STATES.

10     On or about April 26, 2017, and thereafter, certain nurses, nursing assistants, CNA's medical assistants and other allied health professionals provided services to CHANNIEN OJIMBA at the CLINIC.

11.     On or about April 26, 2017, and thereafter, the services provided by MOORE, GUZMAN, and GIBBONS to CHANNIEN OJIMBA at the CLINIC were within the scope of their employment and/or agency with UNITED STATES.

12.     On or about April 26, 2017, and thereafter CHANNIEN OJIMBA presented to UNITED STATES at the CLINIC and was examined and treated by its duly authorized agents.

13.     On or about June 28, 2017, and thereafter UNITED STATES knew that Plaintiff CHANNIEN OJIMBA was desiring pregnancy and actively attempting to get pregnant.

14.     On or about November 18, 2017 and thereafter UNITED STATES, through its authorized agents, prescribed CHANNIEN OJIMBA Paxil at various dosages.

15.     On or about July 19, 2018, UNITED STATES, by and through it agents, employees, and/or apparent agents, diagnosed CHANNIEN OJIMBA as being pregnant.

21

16. At all times relevant herein, it was the duty of UNITED STATES, acting through its employees and/or agents, including but not limited to Defendants, to possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified physicians, nurse practitioners, nurses, CNAs, patient care technicians, and other allied health professionals under circumstances similar to those present in the treatment of CHANNIEN OJIMBA.

17. Beginning on or about November 18, 2017, and continuing thereafter, UNITED STATES, by and through its agents, including but not limited to Defendants, breached its duty to CHANNIEN OJIMBA through one or more of the following negligent acts and/or omissions:

a. prescribed Paxil to CHANNIEN OJIMBA despite knowing that she desired and was attempting to get pregnant; and/or,

b. failed to advise CHANNIEN OJIMBA to stop taking Paxil when attempting to get pregnant; and/or,

c. failed to advise CHANNIEN OJIMBA that Paxil is contraindicated in early pregnancy; and/or,

d. failed to recognize that Paxil may be deleterious to a fetus in early pregnancy; and/or,

e. failed to recognize that Paxil can cause birth defects when taken early in pregnancy; and/or,

f. failed to advise CHANNIEN OJIMBA that Paxil is known to cause birth defects, including an omphalocele, when ingested during the first three (3) months of pregnancy; and/or,

g. refilled CHANNIEN OJIMBA's Paxil prescription despite knowing that she was actively attempting to get pregnant; and/or,

h. continued the prescription for Paxil although they knew or should of known that it could be harmful to her unborn child; and/or,

i. failed to have a policy and procedure in effect forbidding the prescription of SSRI's, including Paxil, to woman of childbearing age, except in extreme cases and/or,

j.    otherwise failed to provide services of reasonably well-qualified physicians, nurse practitioners, nurses, CNAs, patient care technicians, and other allied health professionals under circumstances similar to those present in the treatment of CHANNIEN OJIMBA.

18.    The care and treatment rendered to CHANNIEN OJIMBA did not meet the standard of care which could reasonably have been expected in a patient such as Plaintiff.

19.    As a direct and proximate result of the negligent acts and/or omissions of Defendant's agents, CHANNIEN OJIMBA continued to take Paxil while pregnant and as a result her son, NNAMDI EZEKIEL OJIMBA was born prematurely with an omphalocele on February 15, 2019. CHANNIEN OJIMBA suffered severe emotional distress throughout her pregnancy and thereafter from her fear that the Paxil would cause birth defects and from the injuries NNAMDI EZEKIEL OJIMBA suffers as a result.

20.    The first time CHANNIEN OJIMBA knew or should have known of the negligence was October 23, 2019.

WHEREFORE, CHANNIEN OJIMBA prays for judgment against Defendant UNITED STATES for a fair and reasonable amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), the costs of this lawsuit, pre-judgment and post-judgment interest as allowed by law, and for such other and further relief as this Court may deem just and proper.

### COUNT XI-UNITED STATES
### Medical Negligence- Nnamdi Ezekiel Ojimba

1.    On and after April 26, 2017, UNITED STATES managed, maintained, controlled and operated a medical clinic, known as the HOWARD BROWN HEALTH CENTER ("CLINIC") located at 6500 N. Clark Street, Chicago, Illinois 60626.

2.    On and after April 26, 2017, UNITED STATES permitted and held its officers and

23

employees of the CLINIC to be federal employees for the purpose of malpractice tort claims against such medical clinics.

3.      CLINIC is a not-for-profit Health Center Program grantee under 42 U.S.C. 254b and deemed Public Health Service employee under 42 U.S.C. 233(g)-(n) located in Cook County, Illinois.

4.      On or about April 26, 2017 and thereafter, MOORE was a nurse practitioner providing services to patients at the CLINIC.

5.      On or about April 26, 2017, and thereafter, MOORE was an employee and/or agent, real, apparent or implied, of UNITED STATES.

6.      On or about April 17, 2018 and thereafter, GUZMAN was a medical doctor providing services to patients at the CLINIC.

7.      On or about April 17, 2018 and thereafter, GUZMAN was an employee and/or agent, real, apparent or implied, of UNITED STATES.

8.      On or about November 18, 2017 and thereafter, GIBBONS was a medical doctor providing services to patients at the CLINIC.

9.      On or about November 18, 2017 and thereafter, GIBBONS, was an employee and/or agent, real, apparent or implied, of UNITED STATES.

10      On or about April 26, 2017, and thereafter, certain nurses, nursing assistants, CNA's medical assistants and other allied health professionals provided services to CHANNIEN OJIMBA at the CLINIC.

11.     On or about April 26, 2017, and thereafter, the services provided by MOORE, GUZMAN, and GIBBONS to CHANNIEN OJIMBA at the CLINIC were within the scope of their employment and/or agency with UNITED STATES.

12.     On or about April 26, 2017, and thereafter CHANNIEN OJIMBA presented to UNITED STATES at the CLINIC  and was examined and treated by its duly authorized agents.

13.     On or about June 28, 2017, and thereafter UNITED STATES knew that CHANNIEN OJIMBA was desiring pregnancy and actively attempting to get pregnant.

14.     On or about November 18, 2017 and thereafter UNITED STATES, through its authorized agents, prescribed CHANNIEN OJIMBA Paxil at various dosages.

15.     On or about July 19, 2018, UNITED STATES, by and through it agents, employees, and/or apparent agents, diagnosed CHANNIEN OJIMBA as being pregnant.

16.     At all times relevant herein, it was the duty of UNITED STATES, acting through its employees and/or agents, including but not limited to Defendants, to possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified physicians, nurse practitioners, nurses, CNA's, patient care technicians, and other allied health professionals  under circumstances similar to those present in the treatment of CHANNIEN OJIMBA.

17.     Beginning on or about November 18, 2017, and continuing thereafter, UNITED STATES, by and through its agents, including but not limited to Defendants, breached its duty to CHANNIEN OJIMBA through one or more of the following negligent acts and/or omissions:

a.     prescribed Paxil to CHANNIEN OJIMBA despite knowing that she desired and was attempting to get pregnant; and/or,

b.     failed to advise CHANNIEN OJIMBA to stop taking Paxil when attempting to get pregnant; and/or,

c.     failed to advise CHANNIEN OJIMBA that Paxil is contraindicated in early pregnancy; and/or,

d.     failed to recognize that Paxil may be deleterious to a fetus in early pregnancy; and/or,

e.    failed to recognize that Paxil can cause birth defects when taken early in pregnancy; and/or,

f.    failed to advise CHANNIEN OJIMBA that Paxil is known to cause birth defects, including an omphalocele, when ingested during the first three (3) months of pregnancy; and/or,

g.    refilled CHANNIEN OJIMBA's Paxil prescription despite knowing that she was actively attempting to get pregnant; and/or,

h.    continued the prescription for Paxil although they knew or should of known that it could be harmful to her unborn child; and/or,

i.    failed to have a policy and procedure in effect forbidding the prescription of SSRI's, including Paxil, to woman of childbearing age, except in extreme cases and/or,

j.    otherwise failed to provide services of reasonably well-qualified physicians, nurse practitioners, nurses, CNAs, patient care technicians, and other allied health professionals under circumstances similar to those present in the treatment of CHANNIEN OJIMBA.

18.    The care and treatment rendered to CHANNIEN OJIMBA and NNAMDI EZEKIEL OJIMBA did not meet the standard of care which could reasonably have been expected in patients such as Plaintiffs.

19.    As a direct and proximate result of the negligent acts and/or omissions of Defendant's agents, Plaintiff NNAMDI EZEKIEL OJIMBA was born prematurely with an omphalocele on February 15, 2019.  As a result NNAMDI EZEKIEL OJIMBA has suffered multiple surgeries, emotional distress, pain and suffering, loss of a normal life, disfigurement, medical expenses due to his injuries and other personal and pecuniary injuries.

20.    The first time Plaintiffs knew or should have known of the negligence was October 23, 2019.

WHEREFORE, CHANNIEN OJIMBA as Mother and Next Friend of NNAMDI EZEKIEL

OJIMBA, prays for judgment against Defendant UNITED STATES, for a fair and reasonable amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), the costs of this lawsuit, pre-judgment and post-judgment interest as allowed by law, and for such other and further relief as this Court may deem just and proper.

### COUNT XII-UNITED STATES
### Family Expense Act- Channien Ojimba

1.-20.   Plaintiff realleges Paragraphs 1 through 20 of Count XI of this Complaint as Paragraphs 1 through 20 of this Count XII.

21.      As a direct and proximate result of one or more of the aforesaid acts and/or omissions of UNITED STATES, CHANNIEN OJIMBA will become obligated for medical and rehabilitative expenses related to NNAMDI EZEKIEL OJIMBA's medical care.

WHEREFORE Plaintiff CHANNIEN OJIMBA prays for judgment against Defendant UNITED STATES, for a fair and reasonable amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), the costs of this lawsuit, pre-judgment and post-judgment interest as allowed by law, and for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

CHANNIEN OJIMBA, Individually and as Mother and Next Friend of NNAMDI EZEKIEL OJIMBA, a minor,

By: _____
      One of their attorneys

RAYMOND & RAYMOND, LTD.
1701 E. Woodfield Road, Suite 903
Schaumburg, IL 60173
p: (847) 995-1955
f: (847) 995-1956

27

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>Department of Health & Human Services | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code)<br>Channien Ojimba, as Mother and Next Friend of Nnamdi Ezekiel Ojimba, a minor, 1327 W. Columbia Avenue, Unit A, Chicago, IL 60626 |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒CIVILIAN | 4. DATE OF BIRTH<br>2/15/19 | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>early fetal life likely June/July 2018 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

This claim arises from injuries sustained by Nnamdi Ezekiel Ojimba, a minor, born on February 15, 2019. Channien Ojimba, Nnamdi's mother, began receiving care and treatment at Howard Brown Health Center in Chicago on April 26, 2017. From April 26, 2017 through June, 2018, Howard Brown Health Center employees prescribed Paxil to Channien, even though they knew she was actively trying to get pregnant. Paxil has been linked to congenital abnormalities including omphalocele, where a fetus's intestines and other organs protrude out of the navel. Nnamdi Ezekiel Ojimba was born with an omphalocele and other congenital issues related to his mother's use of Paxil in early pregnancy.

| 9. | PROPERTY DAMAGE | |
|---|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).
Not applicable.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)

Not applicable.

| 10. | PERSONAL INJURY/WRONGFUL DEATH | |
|---|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.
Nnamdi Ezekiel Ojimba was born premature with his liver, gallbladder and intestines outside of his abdomen, Nnamdi's injuries include past and future pain and suffering, past and future loss of a normal life, past and future medical expenses and disfigurement. Nnamdi's mother, Channien Ojimba, is responsible for Nnamdi's medical expenses and has a claim under the Family Expense Act.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| Howard Brown Health Center<br><br>(see attached medical records) | 6500 N. Clark Street, Chicago, Illinois 60626 | |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE<br><br>50,000,000.00+ | 12b. PERSONAL INJURY<br><br>50,000,000.00+ | 12c. WRONGFUL DEATH<br><br>Not at this time | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br><br>100,000,000.00+ |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>*Channien Ojimba- Mother and next friend of Nnamdi Ojimba* | 13b. Phone number of person signing form<br>832/672-2460 | 14. DATE OF SIGNATURE<br>11/27/19 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109

**PLAINTIFF'S EXHIBIT**
**A**
tabbies

STANDARD FORM 95
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No

Not applicable.

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐Yes   ☐No

Not applicable.

17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)

Not applicable.

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

Not applicable.

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim showing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: <br><br> Department of Health & Human Services | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) <br> Channien Ojimba, Individually and as Mother and Next Friend of Nnamdi Ezekiel Ojimba, a minor, 1327 W.Columbia Avenue, Unit A, Chicago, IL 60626 |
|---|---|

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☒CIVILIAN | 4. DATE OF BIRTH 10/26/1974 | 5. MARITAL STATUS Married | 6. DATE AND DAY OF ACCIDENT early fetal life likely June/July 2018 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

This claim arises from injuries sustained by Channien Ojimba, Individually and as Mother and Next Friend of Nnamdi Ezekiel Ojimba, a minor, due to negligence from treatment rendered at the Howard Brown Health Center to Channien Ojimba in Chicago, Illinois. The employees of the Howard Brown Health Center repeatedly prescribed Paxil to Channien from April 26, 2017 through June of 2018 during which time they knew Channien was attempting pregnancy. During that time she got pregnant twice, the first pregnancy ended in a miscarriage. During the second pregnancy, Channien learned that her unborn baby would be born with some of his intestines and/or other organs outside of his body/omphalocele. Nnamdi was born premature with omphalocele requiring surgical care and treatment. The use of Paxil during pregnancy is a proximate cause of the prematurity and omphacele suffered by Nnamdi Ezekiel Ojimba.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).
Not applicable

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)
Not applicable

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.
Nnamdi Ezekiel Ojimba was born premature with his liver, gallbladder and intestines outside of his abdomen. Channien Ojimba has suffered severe emotional distress due to her son's injuries. Channien Ojimba is responsible for Nnamdi's medical expenses and has a claim under the Family Expense Act.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| Howard Brown Health Center <br><br> (see attached medical records) | 6500 N. Clark Street, Chicago, Illinois 60626 | |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE <br><br> 21,094,464.11+ | 12b. PERSONAL INJURY <br><br> 2,000,000.00 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) <br><br> 23,094,464.11+ |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) <br><br> *Channien Ojimba* | 13b. Phone number of person signing form <br> 832/672-2460 | 14. DATE OF SIGNATURE <br> 11/27/19 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109                                    NSN 7540-00-634-4046                        STANDARD FORM 95
                                                                                     PRESCRIBED BY DEPT. OF JUSTICE
                                                                                     28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| | |
|---|---|
| 15. Do you carry accident insurance? ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    ☐ No | |
| Not applicable | |

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?    ☐ Yes    ☐ No    | 17. If deductible, state amount.

Not applicable

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

Not applicable

19. Do you carry public liability and property damage insurance? ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    ☐ No

Not applicable

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) in support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) in support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) in support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

SF 95    BACK



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the General Counsel
General Law Division/General Law Division
Claims Office
330 C Street, S.W.
Switzer Building, Suite 2100
Washington, D.C. 20201

JUL 2 8 2020

**U. S. MAIL CERTIFIED - RETURN RECEIPT REQUESTED**
Article No. 7020 0640 0000 6867 8017

Patricia E. Raymond, Esq.
Law Offices of Raymond & Raymond, LTD
1701 East Woodfield Road, Suite 903
Schaumburg, IL 60173

Re: **Administrative Tort Claim of Channien Ojimba, as Mother and Next Friend of Nnamdi Ezekiel Ojimba (minor),** Claim No. 2020-0301
**Administrative Tort Claim of Channien Ojimba, Individually,** Claim No. 2020-0312

Dear Ms. Raymond:

On February 7, 2020, on behalf of your client, Channien Ojimba, individually and as mother and next friend of Nnamdi Ezekiel Ojimba, a minor, you filed two administrative tort claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(a), 2401(b), 2671-80, alleging, *inter alia,* that, from April 26, 2017 through June 2018, medical providers at Howard Brown Health Center, located in Chicago, Illinois, negligently prescribed Ms. Ojimba *Paxil* during her pregnancy, resulting in Nnamdi Ezekiel Ojimba being born prematurely with an omphalocele and other congenital issues requiring surgical care and treatment.

The FTCA authorizes the settlement of any claim of money damages against the United States for, *inter alia,* injury or death caused by the negligent, or wrongful, act or omission of any employees of the Federal Government, while acting within the scope of employment. Under the FTCA, said act or omission must be such that the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 2672.

This letter constitutes the notice of final determination of your clients' administrative tort claims, as required by 28 U.S.C. §§ 2401(b), 2675(a). The administrative tort claims of Channien Ojimba, individually and as the mother and next friend of Nnamdi Ezekiel Ojimba, a minor, are denied. The evidence fails to establish that the alleged injuries were due to the negligent or wrongful act or omission of a federal employee acting within the scope of employment.



**PLAINTIFF'S EXHIBIT**
B

Patricia E. Raymond, Esq.
Subj: Claim Nos. 2020-0301 and 2020-0312
Pg. 2

If your client is dissatisfied with this determination, she is entitled to:

1.  file a written request with the Agency for reconsideration of the final determination denying the claim within six (6) months from the date of mailing of this determination (28 C.F.R. § 14.9); or

2.  file suit against the United States in the appropriate federal district court within six (6) months from the date of mailing of this determination (28 U.S.C. § 2401(b)).

In the event your client requests reconsideration, the Agency will review the claims within six (6) months from the date the request is received. If the reconsidered claims are denied, your client may file suit within six (6) months from the date of mailing of the final determination.

Sincerely,

*KAH*

*Jennifer B. Smith*

Jennifer B. Smith
Acting Deputy Associate General Counsel
Claims and Employment Law Branch

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CHANNIEN OJIMBA, Individually and as Mother
and Next Friend of NNAMDI EZEKIEL OJIMBA,
a minor,

Plaintiff,

v.                                                                    No:

MICHELLE MOORE, NP, ANDREW                          JURY DEMAND
GUZMAN, M.D., PATRICK GIBBONS, D.O.,
and the UNITED STATES OF AMERICA                    FORM 95, DENIAL LETTER,
                                                                        ATTORNEY AFFIDAVIT AND
Defendants.                                         PHYSICIAN'S REPORTS ARE
                                                                        ATTACHED

**AFFIDAVIT OF PLAINTIFF'S ATTORNEY**
**PURSUANT TO 735 ILCS 5/2-622(a)**

1.      I, Clark M. Raymond, am one of the attorneys representing the Plaintiff in the above-
        captioned case.

2.      I have consulted and reviewed the facts of the case with a health professional, who I
        reasonably believe:

        a.      is knowledgeable in the relevant issues involved in this case;

        b.      has practiced within the last six years in the same area of healthcare or medicine that
                is at issue in this case; and

        c.      is qualified by experience and demonstrated competence in the subject of this case.

3.      The reviewing health professional has determined in a written report, after a review of the
        medical records, radiologic images and other relevant material involved in the case, that
        there is a reasonable and meritorious cause for the filing a negligence cause of action
        against Defendants Michelle Moore, NP, Andrew Guzman, M.D., Patrick Gibbons, D.O.

4.      I have concluded, on the basis of the reviewing health professional's review and
        consultation, that there is a reasonable and meritorious cause for filing this action.

5.      The reviewing health professional is a physician licensed to practice medicine in all its

1

branches.

6.      Attached hereto is the reviewing health professional's written report with the information that would identify the reviewing health professional deleted.

7.      Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, I certify that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe same to be true.

Clark M. Raymond
Bar No.: 6195861
Robert L. Raymond
RAYMOND & RAYMOND, LTD.
1701 E. Woodfield Road, Suite 903
Schaumburg, IL 60173
TEL (847) 995-1955
myra@rr-law.com;
robert@rr-law.com;
clarkraymond@yahoo.com

2

Raymond & Raymond, Ltd.
1701 E. Woodfield Road
Schaumburg, Illinois 60173

   Re: Channien Ojimba and Nnamdi Ezekiel Ojimba

Dear Sir:

   I have reviewed Channien Ojimba and Nnamdi Ezekiel Ojimba's medical records from Howard Brown Health Center and Northwestern Memorial Hospital, including Nnamdi Ezekiel Ojimba's medical records from Lurie Children's Hospital. I am currently a physician and surgeon licensed to practice medicine in all of its branches; I have actively practiced within the past six years; and I am knowledgeable about the issues related to the use of Paxil and the fact that it is contraindicated in the early stages of pregnancy. Based upon my review of these records, I find there is a reasonable and meritorious basis for filing a lawsuit against the Howard Brown Health Center due to the conduct of its various agents and employees, including but not limited to Michelle Moore, N.P., Andrew Guzman, M.D. and Patrick Gibbons, M.D.

   The facts upon which I base this opinion is that on April 26, 2016 Channien Ojimba presented to the Howard Brown Health Center in order to establish patient care and was treated by Michelle Moore, N.P. who prescribed Paxil for Channien's anxiety. On May 15, 2017, Michelle Moore refilled Channien's prescription of Paxil. Then on June 28, 2017, Channien stopped taking Paxil on her own because she became pregnant. Unfortunately Channien subsequently miscarried six weeks later.

   On November 18, 2017, Channien presented to the Howard Brown Health Center and was treated by Dr. Patrick Gibbons. Channien told Dr. Gibbons at that visit that she was actively trying to conceive and asked for a referral to an OB-GYN for follow-up. At this visit, Dr. Gibbons knew Channien was taking Paxil for anxiety but he failed to warn her and advise her to stop using Paxil because Paxil is contraindicated in pregnancy due to the risk of harm to the fetus. Channien continued her use of Paxil while she attempted pregnancy. On March 20, 2018, Channien presented to Michelle Moore and discussed her plans to become pregnant and her husband requested that the couple be tested for fertility. At this appointment Ms. Moore again refilled Channien's prescription for Paxil and did not advise her to stop taking it, nor did Ms. Moore advise Ms. Ojimba that Paxil was unsafe for use in early pregnancy, including at the time of conception.

1

Channien again presented to the Howard Brown Health Center on April 18, 2018, and June 27, 2018, and saw Dr. Andrew Guzman who also failed to advise Channien to discontinue her use of Paxil in light of the fact that she was actively trying to conceive. On July 19, 2018, Channien presented to Dr. Guzman, and was diagnosed with a presumed pregnancy with a last menstrual period of June 12, 2018. At the visit Channien reported that she had stopped using Paxil. On July 24, 2018, the pregnancy was confirmed.

Employees and/or agents of Howard Brown Health Center, including but not limited to, Michelle Moore, N.P., Patrick Gibbons, M.D. and Andrew Guzman, M.D. were all negligent in prescribing and failing to advise Channien Ojimba to stop her use of Paxil given the fact that she wished to conceive. Paxil, an SSRI, is a Class D drug known to be unsafe to be given to women who are trying to get pregnant or who are pregnant as it can cause birth defects, including Omphalocele. It is my opinion that once the health care providers became aware that Channien was actively trying to get pregnant the standard of care required that they immediately take her off Paxil, stop prescribing Paxil and prescribe an anti-anxiety drug rated Class A or B: drugs which would be safe for her and her unborn child.

On February 15, 2019, Nnamdi Ezekiel Ojimba was born premature and with an Omphalocele which is an abdominal wall defect. Although an omphalocele can be known to have a genetic cause, Nnamdi's genetic testing done in October of 2019 at Lurie Children's Hospital confirmed that he did not carry any chromosome abnormalities that would predispose him to developing an omphalocele. Nnamdi was hospitalized at Lurie Children's Hospital from birth until May, 2020, requiring constant medical attention, intubation and ventilation due to his omphalocele. He has endured multiple surgeries and will likely undergo several more surgeries. He was discharged home with a tracheostomy and on a ventilator. He requires 24/7 care.

It is my opinion that the negligence of the employees and/or agents of Howard Brown Health Center is likely the proximate cause of the fact that Nnamdi Ezekiel Ojimba developed an Omphalocele resulting in his premature birth and severe injuries.

For these reasons, it is my opinion that there is a reasonable and meritorious basis for filing a medical malpractice claim against Howard Brown Health Clinic.

The opinions expressed in this letter are based upon the limited information that I have been provided. My purpose in this letter is not to exhaustively describe all of my opinions, but simply to support my position that there exists a reasonable and meritorious basis for filing a medical malpractice claim against Howard Brown Health Clinic for the conduct of its various agents and employees, including but not limited to Michelle Moore, N.P., Andrew Guzman, M.D. and Patrick Gibbons, M.D. . I reserve my right to amending adding opinions and/or withdraw any opinions based upon future discovery and depositions.

Sincerely,

2